## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 13 |
| William T. Cupples, and<br>Melinda A. Cupples, | Case No. 21-10741 (BLS) |
| Debtors. | **Re: D.I.  39** |

## OPINION

Before the Court is the Motion to Dismiss Bankruptcy Case Pursuant to § 1307(c) of the Bankruptcy Code (the "Motion")[1] filed by John Wojciechowski and Anne Dalvet in their capacity as Co-Administrators for the Estate of Eleanor S. Murphy (hereinafter, the "Movants").  The Motion is opposed by the Debtors.[2]  All parties agree that the Court can consider this matter on the papers, and that no evidentiary hearing is required.  For the reasons that follow, the Court will grant the Motion and will dismiss this Chapter 13 case. [3]

## BACKGROUND

The relevant facts are not in material dispute.  Eleanor Murphy died in her home from carbon monoxide poisoning.  Mr. and Mrs. Cupples, the Debtors herein, were alleged to have taken substantial valuable property, including cash, from Ms. Murphy's home following her death.

Movants herein are the duly-appointed administrators of Ms. Murphy's estate.  They commenced a proceeding in federal court in Pennsylvania against the Cupples seeking recovery

---

[1] Docket No. 39.

[2] Docket No. 40.

[3] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedures. *See* Fed. R. Bankr. P. 7052, 9014(c). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (O).

for alleged conversion of valuable property.  As described more fully below, after trial a jury found that Mr. and Mrs. Cupples had indeed wrongfully taken property from Ms. Murphy's home and were liable for conversion.  The jury awarded the Movants a judgment in the amount of $275,000, which is now a final judgment (the "Judgment") that has been recorded in Delaware.

Following entry and recordation of the Judgment, Mr. and Mrs. Cupples filed this Chapter 13 case.  Timely administration of this case has been impeded by litigation between Movants and the Debtors.  No plan has been confirmed in this case as of the date hereof.

## DISCUSSION

Movants have requested that the Debtors' case be dismissed as not having been filed in good faith.  Chapter 13 petitions may be dismissed "for cause" under 11 U.S.C. § 1307. While § 1307 does not explicitly list a good faith requirement, the Third Circuit Court of Appeals has consistently held that a bankruptcy filing may be dismissed "for cause" under 11 U.S.C. § 1307(c) if it is not made in good faith.[4]  The determination of bad faith is a fact intensive inquiry.[5]  "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith."[6]

"Although the Code does not define 'good faith,' courts in this circuit have uniformly held that '[a]t the very least, good faith requires a showing of honest intention.'"[7]  Dismissal based on lack of good faith should be "confined carefully and … generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud,

---

[4] *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996).
[5] *Myers*, 491 F.3d at 125 (quoting *Lilley*, 91 F.3d at 496)).
[6] *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000)
[7] *Id.* (quoting *In re Marks*, 174 B.R. 37, 40 (E.D.Pa. 1994)).

misconduct or gross negligence."[8]   A bankruptcy court has broad power to police its docket and to "decide whether the petitioner has abused the provisions, purpose, or spirit of the bankruptcy law."[9]  Courts are obliged to carefully examine the circumstances underlying a petition for relief in order to protect the integrity of the system and to ensure that the powerful remedies available under the Bankruptcy Code are confined to honest but unfortunate debtors:

> The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt.  Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors.  Good faith and candor are necessary prerequisites to obtaining a fresh start.  The bankruptcy laws are grounded on the fresh start concept.  There is no right, however, to a head start.[10]

In *Myers*, the Third Circuit instructed bankruptcy courts to consider the totality of the circumstances when examining good faith in filing.  Specifically, courts must consider a range of factors, including the nature of the debt, the timing of the petition, how the debt arose, the debtor's motive in filing the petition, how the debtor's action affected creditors, the debtor's treatment of creditors both before and after the petition was filed.[11]  Finally, courts also must consider whether the debtor has been forthcoming with the bankruptcy court and creditors.[12]

The Third Circuit's decision in *Myers* illustrates a court's application of the totality of the circumstances test to determine whether a petition is filed in bad faith.   The debtor in *Myers* filed her Chapter 13 petition the day before a state court was set to rule on a claim that she had fraudulently transferred assets between corporations that she and her husband controlled to avoid

---

[8] *Tamecki*, 229 F.3d at 207 (quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)).
[9] *Myers*, 491 F.3d at 126 (quoting *Tamecki*, 229 F.3d at 207)).
[10] *Industrial Ins. Serv., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129-30 (6th Cir. 1991) (quoting *McLaughlin v. Jones (In re Jones)*, 114 B.R. 917, 926 (N.D. Ohio 1990)).
[11] *Myers*, 491 F.3d at 125.
[12] *Id*.

paying a large judgment previously entered against her.[13]  The court acknowledged the debtor's assertion that a bankruptcy filing made during the pendency of state court litigation is not necessarily bad faith, but "suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider."[14]  The Third Circuit expressed "no doubt that [b]ankruptcy [c]ourts may reasonably find that bad faith exists 'where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose.'"[15]  Further, the court directly held that an "'intention to avoid a large single debt' is properly a factor in the bad faith inquiry."[16]  The Third Circuit affirmed the lower courts' dismissal of Mrs. Myers' chapter 13 case based on lack of good faith in filing.

An examination of the facts in this case shows that it falls squarely within the framework established by *Myers* and similar cases for finding lack of good faith.  Here, the Movants - - co-administrators for the estate of Mrs. Murphy (the "Murphy Estate") -- claimed that the Debtors entered the decedent's residence shortly after her death, without authority, and over a period of months removed property of the deceased, including large amounts of cash, coins, and valuable antique furniture.  After a trial in the United States District Court for the Middle District of Pennsylvania, a jury found the Debtors liable for conversion and the Murphy Estate was awarded $275,000 in compensatory damages.  The Movants argue that the Debtors' bankruptcy filing was

---

[13] *Myers*, 491 F.3d at 122.  In June 1999, Southern Medical Supply Co. ("SMS") obtained a $739,044.32 judgment in a Georgia state court against Mrs. Myers, her husband, and two corporations owned by the husband.  *Id.*  SMS transferred the Georgia judgment to Bucks County, Pennsylvania, where Mr. and Mrs. Myers lived.  Then SMS filed a lawsuit against Mr. and Mrs. Myers and Alpha Watch, Inc. ("AWI"), a corporation for which Mrs. Myers was the president and sole shareholder.  SMS claimed that Mr. and Mrs. Myers had fraudulently conveyed the assets of Mr. Myers' corporations to AWI.  *Id.*  After trial, the state court judge announced that he would render his judgment in court on Friday, August 13, 2004.  Mrs. Myers filed her chapter 13 bankruptcy petition on Thursday, August 12, 2004.  *Id.* at 123.
[14] *Myers*, 491 F.3d at 125 (citing *Tamecki*, 229 F.3d at 208)).
[15] *Myers*, 491 F.3d at 125 (quoting *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D.Pa. 1994)).  The *Myers* Court recognized that other courts "applying a narrow definition of bad faith have held that it is appropriate for a bankruptcy court to assess the debtor's purpose and, if that purpose is to frustrate another court's jurisdiction, to consider it in the bad faith inquiry." *Id.* (citations omitted).
[16] *Myers*, 491 F.3d at 126 (quoting *Tamecki*, 229 F.3d at 207)).

driven entirely by the desire to thwart the Murphy Estate's ability to collect the large Judgment that was based on the Debtors' misconduct.  The Movants argue that an examination of the *Myers* factors should lead this Court to conclude that the Debtors' Chapter 13 petition was not filed in good faith and abuses the provisions, purpose, and spirit of the Bankruptcy Code.

The Movants also argue that the timing of the bankruptcy filing indicates that the Debtors' motive was simply a tactic to avoid liability to the Murphy Estate, rather than an honest intent to reorganize their debts and seek a fresh start.  The Judgment was entered on October 17, 2019, and according to the Debtors' Statement of Financial Affairs, the Debtors paid a retainer to hire their bankruptcy attorney twenty days later.[17]  On February 22, 2021, the Murphy Estate recorded the Judgment in the New Castle County Superior Court for the State of Delaware, creating a judicial lien against the Debtors' real property in Newark, Delaware.  Within 90 days of recordation, the Debtors had their home appraised, completed Credit Counseling, and filed their bankruptcy petition.[18]

The Movants also assert that the bankruptcy filing is unfair to creditors and that the Debtors have not been entirely forthcoming with the Bankruptcy Court and creditors.  The Movants assert that after the § 341 meeting, during which Movants' counsel inquired to the whereabouts of money and property from the Murphy Estate, the Debtors amended their Statement of Financial Affairs to include the donation of a total of $50,585 in cash and non-cash contributions to six different charities in the two years preceding the bankruptcy filing.  The record suggests that these large charitable donations are not consistent with any established historical practice of charitable giving by the Debtors.  The Movants thus argue that the

---

[17] Docket No. 1, p. 13 of 63 (Statement of Financial Affairs).
[18] The Debtors' Chapter 13 bankruptcy petition was filed on April 23, 2021.  Obviously, the careful timing of the Debtors' filing could operate to render the Movants' lien arising from the recordation of the Judgment a voidable preference.  *See* 11 U.S.C. § 547(b)(4)(A).

prepetition transfers of assets are further evidence of bad faith as it indicates the Debtors distributed or diminished the value of property in the bankruptcy estate that would otherwise have been available to pay creditors under a Chapter 13 plan.

The Debtors do not dispute the fact of the Judgment for conversion entered against them. In responding to the Motion, they instead focus heavily on their performance while in Chapter 13 - - including timely filing their Schedules and Statements, concluding the § 341 Meeting, and timely proposing a Chapter 13 Plan and making payments thereunder.  In addition, the Debtors remind the Court that their bankruptcy case was filed during the Covid-19 pandemic, which had adversely impacted their income.

The totality of the circumstances surrounding the timing of the Debtors' Chapter 13 filing, however, reveal the Debtors' effort to transport a two-party dispute into the bankruptcy system and frustrate the Murphy Estate's efforts to collect upon its Judgment.  The Debtors' sworn schedules in this case generally reflect modest and typical debt obligations that were not in significant arrears at the time of the filing, other than the Movants' large Judgment.  It is difficult to conclude that the case was filed for any reason other than the pendency and recordation of the Judgment.

## **CONCLUSION**

Based upon the foregoing, the record before the Court reflects that the Debtors' bankruptcy proceedings were not commenced in good faith.  Accordingly, the Court will enter an order dismissing this case.

Dated:  Wilmington, Delaware
       March 15, 2024

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE